Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| NEGOCIADO DE TELECOMUNICACIONES DE PUERTO RICO DE LA JUNTA REGLAMENTADORA DEL SERVICIO PÚBLICO<br><br>Parte Apelada<br><br>v.<br><br>SOLIX, INC.<br><br>Parte Apelante | TA2025AP00331 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2024CV03141<br><br>Sobre:<br>Cobro de Dinero - Ordinario |

Panel integrado por su presidenta la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

Rodríguez Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de octubre de 2025.

Comparece Solix, Inc. (Solix o parte apelante) mediante el recurso de *apelación* de epígrafe incoado el 10 de septiembre de 2025.[1] Solicita que revoquemos la *Sentencia* pronunciada y notificada el 10 de julio de 2025 por el Tribunal de Primera Instancia (TPI, foro primario o foro apelado), Sala Superior de San Juan.[2] Mediante el referido dictamen, el foro primario declaró *no ha lugar* a la solicitud de sentencia sumaria[3] presentada por Solix y, a su vez, determinó que procedía dictar sentencia sumaria a favor del Negociado de Telecomunicaciones de Puerto Rico (NET o parte apelada), según solicitado en su oposición.[4] En consecuencia, determinó que procedía la causa de acción en cobro de dinero instada por el NET y le ordenó a Solix devolver los setenta y tres (73) desembolsos recibidos, desde el 24 de abril de 2011 hasta el 31 de

---

[1] *Apelación Civil*, SUMAC TA en el recurso TA2025AP00331, entrada 1.
[2] *Sentencia*, SUMAC TA, Apéndice del recurso, entrada 42.
[3] *Moción solicitando que se dicte Sentencia Sumaria a favor de Solix, Inc.*, *Íd.*, entrada 26.
[4] *Contestación a [la] "Moción de Sentencia Sumaria"*, *Íd.*, entrada 38.

diciembre de 2017, los cuales totalizaban la suma de $1,031,028.00.

El 9 de octubre de 2025, el NET compareció ante foro revisor mediante *Alegato en Oposición de la Parte Apelada*.

Examinados los escritos a la luz del derecho aplicable y por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

## I.

El 4 de abril de 2024, el NET presentó una *Demanda* sobre cobro de dinero contra Solix.[5] En esta, arguyó que su antecesora, la Junta Reglamentadora de Telecomunicaciones (JRT), y Solix otorgaron un contrato mediante el cual la entidad privada se obligó a administrar y operar el Fondo Universal de Servicio de Puerto Rico por la cuantía de $570,000.00. Esbozó que el acuerdo tenía una vigencia de tres (3) años —desde el 23 de abril de 2007 hasta el 23 de abril de 2010— lo que podría extenderse por dos (2) términos opcionales de un año, siempre que se negociara y se adoptara por mutuo acuerdo entre las partes dentro de los ciento ochenta (180) días previos a la finalización de cada término. Alegó que, el 21 de abril de 2010, se realizó una enmienda al contrato para aumentar por $153,000.00 la cuantía antes establecida y extender la vigencia del contrato por un año adicional. Añadió que, luego de terminado el contrato, Solix continuó brindando servicios, los cuales fueron facturados, cobrados y pagados, hasta el 31 de diciembre de 2017. Expuso además que, la Oficina del Contralor de Puerto Rico (Oficina del Contralor) realizó una auditoría a las operaciones fiscales del NET, en la que surgió que el desembolso de setenta y tres (73) pagos a Solix por concepto de servicios prestados fue realizado sin contar con un contrato vigente. Así, se le recomendó recobrar los fondos

---

[5] *Demanda, Íd.*, entrada 1.

desembolsados de forma indebida a Solix, los cuales totalizaban la cantidad de $1,031,028.00. Adujo que, cónsono con dichas recomendaciones, intentó recobrar la deuda extrajudicialmente en dos ocasiones, pero Solix se negó a satisfacerla argumentando que no procedía el recobro.

El 3 de septiembre de 2024, Solix contestó la demanda.[6] En su escrito, alegó que los servicios prestados entre el 25 de abril de 2011 al 31 de diciembre de 2017 se ejecutaron a solicitud y/o permitidos por la JRT mes a mes, de conformidad con la Cláusula Número 23 del contrato, y que los pagos se desembolsaron correctamente.

Luego de varios trámites procesales que resultan innecesarios pormenorizar, el 11 de octubre de 2024, Solix presentó una moción de sentencia sumaria.[7] Mediante su solicitud, arguyó que el único asunto en controversia era una cuestión de estricto derecho pues versaba sobre la validez de los pagos. Además, planteó que la Cláusula 23 del contrato era una cláusula de *holding over* para garantizar la continuidad de los servicios, lo que le facultó a brindar servicios luego de la expiración del acuerdo. Concluyó que procedía que el TPI desestimara sumariamente la *Demanda* pues los servicios habían sido brindados al amparo de un contrato vigente, por lo que el dinero desembolsado era válido.

En respuesta, el 12 de noviembre de 2024, el NET radicó su oposición a la moción dispositiva incoada por Solix que fungió, a su vez, como una solicitud de sentencia sumaria.[8] Reiteró su postura en cuanto a que se incumplió con un requisito esencial de la contratación gubernamental al decidir que el contrato se renovaría mes a mes sin ello constar por escrito. Argumentó que procedía el

---

[6] *Contestación a la Demanda, Íd.*, entrada 12.
[7] *Moción solicitando que se dicte Sentencia Sumaria a favor de Solix, Íd.*, entrada 26.
[8] *Contestación a [la] "Moción de Sentencia Sumaria", Íd.*, entrada 38.

recobro toda vez que no existió un contrato válido entre las partes entre el 25 de abril de 2011 al 31 de diciembre de 2017. Por ello, le solicitó al foro apelado que dictara sentencia sumaria a su favor y, en consecuencia, declarara ha lugar su causa de acción en cobro de dinero y le ordenara a Solix devolver la totalidad de los pagos.

En objeción a esto, Solix presentó una réplica el 20 de noviembre de 2024.[9] En ella, en esencia, reiteró lo apuntalado en su solicitud de sentencia sumaria.

Así, el 10 de julio de 2025, el foro primario dictaminó sumariamente una *Sentencia* mediante la cual declaró *ha lugar* a la solicitud de sentencia sumaria incoada por el NET y, consecuentemente, resolvió que procedía el recobro de los setenta y tres (73) desembolsos efectuados a Solix desde el 24 de abril de 2011 hasta el 31 de diciembre de 2017, valorados en $1,031,028.00.[10] Tras evaluar las peticiones y los documentos acompañados, el foro apelado procedió a formular las siguientes determinaciones de hechos:

> 1. La Junta Reglamentadora de Telecomunicaciones fue una agencia creada por la Ley de Telecomunicaciones de Puerto Rico de 1996, Ley Núm. 213-1996 (27 LPRA §265 *et seq.*) y encargó de reglamentar los servicios de telecomunicaciones en Puerto Rico, administrar y hacer cumplir la mencionada ley.
>
> 2. La Sección 254(b)(3) de la Ley Federal de Telecomunicaciones Comunicaciones estableció que:
>
> Los consumidores de todas las regiones de la nación, incluidos los consumidores de bajos ingresos y aquellos en áreas rurales, insulares y de alto costo, deben tener acceso a servicios de telecomunicaciones e información, incluidos servicios de intercambio y servicios avanzados de telecomunicaciones e información, que sean razonablemente comparables a los servicios proporcionados en áreas urbanas y que estén disponibles a tarifas que sean razonablemente comparables a las tarifas cobradas por servicios similares en áreas urbanas.
>
> 3. En la Sección 254(d) de la Ley Federal de Telecomunicaciones Comunicaciones se expone que "[t]odo operador de telecomunicaciones que preste servicios de telecomunicaciones interestatales deberá contribuir, de manera equitativa y no discriminatoria, a los mecanismos

---

[9] *Réplica a [la] 'Contestación a [la] "Moción de Sentencia Sumaria"', Íd.*, entrada 39.
[10] *Sentencia, Íd.*, entrada 42.

específicos, predecibles y suficientes establecidos por la Comisión [Federal de Comunicaciones] para preservar y promover el servicio universal".

4. De igual manera, la Sección 254 permite que cada estado, adopte reglamentación que no sea inconsistente con las reglas de la CFC para preservar y adelantar el servicio universal.

5. Para propósitos de la Ley Federal de Comunicaciones, el término "estado" incluye a los territorios.

6. El Fondo de Servicio Universal Federal, (en adelante, "FSUF") es un fondo establecido por la Comisión Federal de Comunicaciones (en adelante, "CFC") el cual consiste [en el] dinero que se colecta de las compañías de telecomunicaciones conforme a la previamente citada Sección 254 de la Ley Federal de Telecomunicaciones.

7. Solix es una corporación foránea con fines de lucro, autorizada a hacer negocios en Puerto Rico.

8. En el 2007, la JRT emitió la Subasta Núm. 2007-01, caso número JRT-2004-SU-0002, mediante el cual se seleccionó a Solix como administrador independiente para el Fondo de Servicio Universal de Puerto Rico.

9. Para formalizar lo anterior, el 23 de abril de 2007 la JRT y Solix otorgaron el Contrato Núm. 2007-000047 (en adelante, el "contrato").

10. En el contrato, las partes acordaron que el contrato tendría vigencia desde el 23 de abril de 2007 hasta el 23 de abril de 2010 por la cuantía total de $570,000.00.

11. La Cláusula Núm. 21 del contrato dispuso que:

TWENTY-ONE: The term of this CONTRACT is three (3) years from the execution date indicated at the end of this document, when duly signed by the authorized representatives of both parties, with two (2) optional terms renewals of one (1) year to be negotiated and adopted by mutual agreement within One Hundred Eighty (180) day before termination of each term.

12. Por otra parte, la Cláusula Núm. 23 del contrato estableció que:

TWENTY-THREE: In the event that the BOARD chooses not to renew the CONTRACT, CONTRACTOR will cooperate with the BOARD to transition the administrative responsibilities and records to the entity selected by the BOARD. If CONTRACTOR is requested to continue in its capacity following the expiration of this CONTRACT pending transition to the entity selected by the BOARD, CONTRACTOR shall charge all costs of such activities in the same terms and conditions of this CONTRACT.

13. En el contrato, las partes acordaron que el contrato tendría vigencia desde el 23 de abril de 2007 hasta el 23 de abril de 2010 por la cuantía total de $570,000.00.

14. El 14 de enero de 2010, se aprobó el Reglamento Núm. 7795 de la Junta, titulado Reglamento sobre Servicio Universal, (en adelante, "Reglamento 7795").

15. El propósito y ámbito del Reglamento 7795 es "implantar en Puerto Rico el Servicio Universal, de manera que se provea el mismo a todos los ciudadanos de Puerto Rico a un precio justo, razonable y asequible", conforme al mandato de la Ley Núm. 213, supra y de la Sección 254(f) de la Ley Federal de Telecomunicaciones.

16. La tercera sección del Reglamento 7795 titulada "Definiciones", describió en su inciso (g) el "Fondo de Servicio Universal de Puerto Rico", como el "fondo establecido por la [JRT] para fomentar el Servicio Universal en Puerto Rico".

17. El 21 de abril de 2010, la JRT y Solix suscribieron una enmienda respecto al Contrato Núm. 2007-000047.

18. Entre las enmiendas, la Cláusula Núm. 19 fue modificada para aumentar a $153,000.00 el límite contractual establecido.

19. De igual forma, se enmendó el inciso (c) de la Cláusula Núm. 19 para extender el término del contrato por un año adicional, es decir, hasta el 24 de abril de 2011.

20. Por otra parte, se enmendó la Cláusula Núm. 56 del contrato para modificar la información de contacto y la dirección física de Solix.

21. La Cláusula Núm. 4 contenida al final de la enmienda al contrato, dispuso que todos los demás términos y condiciones del contrato que no sean inconsistentes con las enmiendas allí incluidas se mantendrán vigentes y en efecto.

22. El 1 de abril de 2011, el Sr. Seguin le envió una carta por correo a la presidenta de la Junta en aquel entonces, Sandra E. Torres López, en la que recordó que la vigencia del contrato estaba pronto a terminar y que, en virtud de la Cláusula Núm. 21 proponía extender el acuerdo por un año adicional, es decir, hasta el 23 de abril de 2012.

23. Relacionado a lo anterior, el 14 de abril de 2011, la Sra. Farkas y [Á]ngel Oquendo Figueroa, director de finanzas de la JRT para aquel entonces, (en adelante, "Sr. Oquendo") se comunicaron vía correo electrónico y el Sr. Oquendo le indicó que le informará a la JRT la propuesta de extender el término pero que entendía que en el ínterin continuarían efectuando las obligaciones contractuales mes a mes hasta tomar una decisión final.

24. El 14 de julio de 2014, Javier Rua Jovet, presidente en ese momento de la JRT, (en adelante, "Sr. Rua") le envió una misiva a Carol C. Kenner, de Solix, titulada "Performance Bond – Request for Reduction" en la que aprobó la solicitud de reducción de fianza y expresó que "the current contract term is on a month to month basis".

25. El 9 de junio de 2017, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 34, supra, a los fines de enmendar la Ley Núm. 213, supra, y facultar a la JRT a administrar el Fondo de Servicio Universal de Puerto Rico.

26. Cónsono con el acápite anterior, el 1 de marzo de 2018, la Asamblea Legislativa de Puerto Rico aprobó el Plan de Reorganización Núm. 8, mediante el cual la JRT se convirtió en el Negociado de Telecomunicaciones, adscrito a la Junta Reglamentadora del Servicio Público.

27. El 15 de abril de 2021, la Oficina del Contralor emitió un "Informe de Auditoría CP-21-08" respecto al NET para el periodo del 1 de julio de 2015 al 30 de junio de 2019.

28. Desde abril de 2011 hasta diciembre de 2017, Solix continuó brindando los servicios de administración del Fondo de Servicio Universal de Puerto Rico.

29. Durante el periodo desde abril de 2011 hasta diciembre de 2017, el director de Finanzas y Presupuesto de la JRT recibió de Solix facturas de sus servicios y de las compañías de telecomunicaciones elegibles para el archivo correspondiente.

30. Como parte del proceso administrativo, Solix autorizó los mencionados desembolsos, efectuados mediante transferencias electrónicas, que a su vez fueron aprobados por los comisionados de la JRT.

31. Desde el 28 de abril de 2011 hasta el 1 de marzo de 2018, la JRT realizó setenta y tres (73) desembolsos por $1,031,028 a Solix por servicios prestados del 25 de abril de 2011 al 31 de diciembre de 2017.

32. El Contralor concluyó que la actuación de autorizar los desembolsos a Solix infringió las disposiciones del Artículo 3(a) y (b) de la Ley para Establecer Parámetros Uniformes en los Procesos de Contratación de Servicios Profesionales o Consultivos para las Agencias y Entidades Gubernamentales, Ley Núm. 237-2004, según enmendada, (3 LPRA sec. 8611 *et seq.*); el Artículo 1(a) y (e) de la Ley del Registro de Contratos en la Oficina del Contralor de Puerto Rico, Ley Núm. 18 de 30 de octubre de 1975, según enmendada, (2 LPRA sec. 97 *et seq.*), y los incisos C y G de la enmienda que le realizaron al contrato original.

33. Igualmente, el Contralor determinó que los entonces Comisionados de la JRT, durante el periodo en cuestión, no protegieron adecuadamente los intereses de la agencia y del fondo al no suscribir un contrato por escrito respecto a la administración del Fondo.

34. En su informe, el Contralor recomendó que se realizara el recobro de la suma total de $1,031,028.00 desembolsados a Solix por los servicios prestados y facturados durante el periodo comprendido entre abril de 2011 hasta diciembre de 2017.

35. El 7 de septiembre de 2021, la Sra. Farkas le envió al NET una misiva titulada "Factura al cobro por fondos desembolsados a la compañía Solix, Inc." en la que explicó que a base del "Informe de Auditoría" que emitió el Contralor y de las recomendaciones allí incluidas, le solicita la devolución de $1,031,028.00 desembolsados en concepto de pagos por los servicios brindados desde abril de 2011 hasta diciembre de 2017.

36. El 21 de noviembre de 2021, el Sr. Seguín le remitió una carta al NET solicitándole una prórroga para responderle adecuadamente, y el 24 de diciembre de 2021, la representación legal de Solix, PR Legal Advisers, LLC. finalmente contestó la carta de cobro y esencialmente le solicitó al NET reconsiderar su postura conforme a la controversia.

37. El 6 de abril de 2022, la representación legal de la Junta, respondió la misiva descrita previamente y se reafirmó en su solicitud original de cobro de dinero por los setenta y tres pagos emitidos y desembolsados durante abril de 2011 y diciembre de 2017.

38. El 23 de mayo de 2023, la Junta envió una última reclamación extrajudicial conforme al cobro de dinero de los $1,031,038 desembolsados y advirtió que, de no recibir respuesta o pago dentro del término de sesenta días, procedería a instar una reclamación judicial para recuperar el dinero

39. En respuesta al comunicado descrito en el acápite anterior, el 21 de julio de 2023, la representación legal de Solix solicitó nuevamente que reconsidere postura respecto a la controversia y pidió que se lleve a cabo una reunión formal para atender cualquier duda o preocupación al respecto.

40. El 5 de febrero de 2024, la Junta le informó mediante carta a la representación legal de Solix que procedería a incoar una demanda en cobro de dinero en contra de la entidad.[11]

A base de dichas determinaciones, el foro primario concluyó que, todos los servicios brindados por Solix posterior al 24 de abril de 2011 -fecha en que venció el contrato- fueron prestados y remunerados en contravención a las normas establecidas para la contratación gubernamental en Puerto Rico. En ese contexto, el tribunal coligió que las comunicaciones verbales internas para extender la contratación de mes a mes no tuvieron el efecto de sustituir la ausencia del contrato escrito que exige la ley ni vincularon de manera legítima a la antigua JRT a pagar a Solix por los servicios prestados.

En desacuerdo, el 24 de julio de 2025, Solix presentó una reconsideración ante el foro apelado.[12] A esto, el NET refutó el 8 de agosto de 2025.[13] Así las cosas, la solicitud de Solix fue declarada *no ha lugar* por el foro primario mediante una *Resolución Interlocutoria* emitida y notificada el 11 de agosto de 2025.[14]

---

[11] *Íd.*, págs. 5-10.
[12] *Moción de Reconsideración, Íd.*, entrada 43.
[13] *Oposición a [la] "Moción de Reconsideración" de la Sentencia emitida el 10 de julio de 2025, Íd.*, entrada 45.
[14] *Resolución Interlocutoria, Íd.*, entrada 46.

Insatisfecho aún, el 10 de septiembre de 2025, Solix acudió ante este foro revisor mediante recurso de *Apelación Civil* y señaló que el foro primario cometió el siguiente error:

> Erró el Honorable Tribunal de Primera Instancia, al resolver la sentencia sumaria a favor del NET cuando los servicios prestados por Solix están fundamentados en una obligación clara bajo una cláusula de retención válida ante las circunstancias de este caso.[15]

El 9 de octubre de 2025, el NET radicó ante nos su escrito intitulado *Alegato en Oposición de la Parte Apelada.*

## II.

### A.

Es harto conocido que el mecanismo procesal de la sentencia sumaria se rige por la Regla 36.1 de las de Procedimiento Civil.[16] El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario.[17] De esta forma, se promueve la descongestión de calendarios.[18]

Por medio de este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta.[19] Sin embargo, la sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros: cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y que solo reste por disponer las controversias de derecho existentes.[20]

El promovente de una sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en

---

[15] *Apelación Civil*, supra, pág. 13.
[16] Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1.
[17] *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 19-20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).
[18] *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).
[19] *Íd.*, pág. 332.
[20] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994).

evidencia, que no existe controversia real respecto a hechos materiales de la polémica.[21] Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo.[22] De igual modo, la parte promovente puede presentar una sentencia sumaria por insuficiencia de prueba si demuestra que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial, y (3) procede como cuestión de derecho.[23]

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real por lo cual cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria.[24] En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales.[25] De esta manera, la parte promovida debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición.[26] Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa".[27] No puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa.[28] En síntesis, ha quedado establecido que los tribunales no pueden dictar sentencia sumaria en cuatro (4) situaciones: (1) cuando existan hechos materiales y esenciales

---

[21] Regla 36.1 de las de Procedimiento Civil, *supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015).

[22] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

[23] *Pérez v. El Vocero de PR*, 149 DPR 427, 446-447 (1999).

[24] *Meléndez González et al. v. M. Cuebas*, supra, pág. 110.

[25] *Íd., citando a Ramos Pérez v. Univisión,* supra, pág. 214.

[26] *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020).

[27] *Íd.*

[28] Regla 36.3 (c) de las de Procedimiento Civil, *supra*, R. 36.3 (c); véase *SLG Zapata-Rivera v. JF Montalvo*, supra, pág. 452-453; *Ramos Pérez v. Univisión*, supra, págs. 215-216.

controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial, o (4) cuando no procede como cuestión de derecho.[29]

Entretanto, la Regla 36.3 de las de Procedimiento Civil, *supra*, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida.[30] Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3 (a) de las de Procedimiento Civil dispone que la misma tiene que desglosar lo siguiente:

> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
> (6) el remedio que debe ser concedido.[31]

Mientras tanto, la Regla 36.3 (b) de las de Procedimiento Civil prescribe que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia, y las razones por las cuales no se debe dictar la

---

[29] *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).
[30] Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3.
[31] *Íd.*, R. 36.3 (a).

sentencia, argumentando el derecho aplicable.[32] Asimismo, cuando se presente una solicitud de sentencia sumaria conforme a la Regla 36 de las de Procedimiento Civil "la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede".[33]

En esa misma línea, la juzgadora o el juzgador de los hechos debe evaluar la prueba presentada para determinar cuáles hechos han quedado demostrado sujeto a que "[e]l peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes";[34] "[l]a obligación de presentar evidencia primariamente recae sobre la parte que sostiene la afirmativa en el asunto en controversia";[35] y, en casos civiles, la decisión de la juzgadora y el juzgador se realizará mediante la preponderancia de la prueba conforme a criterios de probabilidad.[36] La preponderancia de la prueba ha sido definida como cuando se establece "como hechos probados que con mayores probabilidades ocurrieron".[37]

De otra parte, nuestro Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.[38]

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de las de

---

[32] *Íd.*, R. 36.3 (b).
[33] *Íd.*, R. 36.3 (c).
[34] Regla 110 (A) de Evidencia, 32 LPRA Ap. VI, R. 110 (A).
[35] *Íd.*, R. 110 (B).
[36] *Íd.*, R. 110 (F).
[37] *Berríos v. UPR*, 116 DPR 88, 101 (1985), citando a *Zambrana v. Hospital Santo Asilo de Damas*, 109 DPR 517, 521 (1980).
[38] *Meléndez González et al. v. M. Cuebas*, supra.

Procedimiento Civil,[39] al igual que los criterios que la jurisprudencia le exige al foro primario. Asimismo, debe examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Ahora bien, nuestro máximo foro reconoció que el foro apelativo está limitado, toda vez que no puede tomar en consideración evidencia que las partes ni presentaron ante el foro primario ni adjudicar los hechos materiales en controversia.[40]

En segundo lugar, señaló que el Tribunal de Apelaciones debe revisar que tanto la moción en solicitud de sentencia sumaria como la oposición cumplan con los requisitos de forma codificados en la Regla 36 de las de Procedimiento Civil.[41]

En tercer lugar, ordenó que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de las de Procedimiento Civil.[42]

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el derecho a la controversia.[43]

**B.**

En nuestra jurisdicción, la contratación gubernamental de todo tipo de servicios está revestida del más alto interés público, pues persigue fomentar la inversión adecuada, responsable y

---

[39] Regla 36 de las de Procedimiento Civil, *supra.*
[40] *Meléndez González et al. v. M. Cuebas*, supra, pág. 118.
[41] *Íd.*; Regla 36 de las de Procedimiento Civil, *supra.*
[42] *Meléndez González et al. v. M. Cuebas*, supra, pág. 118; 32 LPRA Ap. V, R. 36.4.
[43] *Meléndez González et al. v. M. Cuebas*, supra, pág. 119.

eficiente de los recursos del Estado.[44] En consonancia, "el Estado está obligado, por imperativo constitucional, a manejar los fondos públicos con los principios fiduciarios y éticos más altos".[45] En específico, la Sección 9 del Artículo VI de la Constitución de Puerto Rico establece que "[s]ólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley".[46]

El Tribunal Supremo de Puerto Rico ha enfatizado que, para proteger los intereses y dineros del Pueblo, se debe aplicar rigurosamente todas las normas pertinentes a la contratación y desembolso de bienes o fondos públicos.[47] Además ha resaltado la necesidad de evitar el dispendio, la extravagancia, el favoritismo y prevaricación en los contratos gubernamentales.[48] Por esta razón, la validez de los contratos con entidades gubernamentales tiene que determinarse de acuerdo con los estatutos especiales que regulan la contratación gubernamental, y no según la teoría general de las obligaciones y contratos del Código Civil.[49] A esos fines, la Legislatura ha aprobado leyes que imponen controles fiscales y de contratación gubernamental.[50]

La Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como Ley de Contabilidad del Gobierno de Puerto Rico establece la política pública respecto al control y la contabilidad de fondos y propiedad pública en el Gobierno de Puerto Rico.[51] Esta expone que la política pública es que exista un control previo de

---

[44] *St. James Sec. v. AEE*, 213 DPR 366, 377 (2023), citando a *SLG Ortiz-Mateo v. ELA*, 211 DPR 772 (2023), *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *ECA Gen. Contrac. v. Mun. de Mayagüez*, 200 DPR 665, 672 (2018).

[45] *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 456 (2014); *Jaap Corp. v. Depto. Estado et al.*, 187 DPR 730, 739 (2013).

[46] Art. VI, Sec. 9, Const. PR, LPRA, Tomo 1.

[47] *De Jesús González v. A.C.*, 148 DPR 255, 267-268 (1999).

[48] *Íd.*, pág. 268.

[49] *Landfill Technologies v. Mun. de Lares,* 187 DPR 794, 800 (2013); *Quest Diagnostic v. Mun. San Juan*, 175 DPR 994, 1000 (2009).

[50] *Rodríguez Ramos et al. v. ELA et al.*, supra, pág. 456.

[51] 3 LPRA sec. 283 *et seq.*

todas las operaciones del gobierno y que su contabilidad constituya un control efectivo sobre los ingresos, desembolsos, fondos y otros activos del gobierno.[52] Asimismo, dispone que los fondos autorizados para un año económico se aplicarán únicamente al pago de obligaciones legalmente contraídas y debidamente asentadas en los libros durante dicho año.[53] Así pues, dicha ley establece que, para que un contrato otorgado por el Estado y una parte privada sea valido y exigible, este debe constar por escrito previo a las prestaciones correspondientes.[54]

De otra parte, en lo pertinente, el Artículo 1 de la Ley Núm. 18 de 30 octubre de 1975, según enmendada, conocida como Ley de Registros de Contratos, establece que las entidades gubernamentales del Estado Libre Asociado de Puerto Rico, sin excepción alguna, deberán mantener "un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato o la enmienda".[55]

Al respecto, el Tribunal Supremo ha interpretado que la sana administración pública requiere, para que el contrato suscrito entre el Gobierno y la parte privada sea válido, que se cumplan los siguientes requisitos: (1) reducirse a escrito; (2) mantener un registro fiel con miras a establecer su existencia; (3) remitir copia a la Oficina del Contralor como medio de una doble constancia de su otorgamiento, términos y existencia, y (4) acreditar que se realizó y otorgó quince (15) días antes.[56] Por ello, "es crucial que [las entidades gubernamentales y] los municipios hayan actuado acorde

---

[52] 3LPRA sec. 283a.

[53] 3 LPRA sec. 283g.

[54] *Rodríguez Ramos et al. v. ELA et al.*, supra, pág. 458.

[55] 2 LPRA sec. 97.

[56] *Génesis Security v. Depto. Trabajo*, 204 DPR 986, 998 (2020); *Rodríguez Ramos et al. v. ELA et al.*, supra, pág. 461-462.

con los procedimientos establecidos por ley y nuestra jurisprudencia interpretativa al momento de desembolsar fondos públicos para el pago de las obligaciones contraídas".[57]

De hecho, el Tribunal Supremo ha reiterado que las partes que contratan con cualquier entidad gubernamental sin cumplir con los requisitos de contratación gubernamental se arriesgan a asumir la responsabilidad por sus pérdidas. Ello pues se presume que las partes privadas conocen la necesidad de conducirse de acuerdo con las especificaciones de la ley, por lo que se espera que ejerzan un rol más activo y exijan prueba fehaciente de que el Gobierno cumplió con su deber.[58] Cónsono con ello, nuestro más Alto Foro ha rechazado la aplicación de cualquier remedio en equidad, como el enriquecimiento injusto, para convalidar la obligación pública sin contrato escrito y así indemnizar los daños sufridos por una parte privada al no cumplir con estos requisitos.[59]

Siendo así, un contrato entre una parte privada y una entidad gubernamental que no cumpla con las leyes que imponen controles fiscales será nulo e inexistente.[60]

### III.

En el recurso que nos ocupa, la parte apelante aduce que el foro apelado incidió al resolver la sentencia sumaria a favor del NET, pues sostiene que los servicios prestados estaban fundamentados en una obligación clara bajo una cláusula de retención válida ante las circunstancias del caso.

En primer lugar y, a tenor con el marco jurídico previamente expuesto, nos encontramos en la misma posición que el TPI para revisar una solicitud de sentencia sumaria. Primero, nos compete evaluar si las partes cumplieron con los requisitos de forma exigidos

---

[57] *ALCO Corp. v. Mun. de Toa Alta,* 183 DPR 530, 537 (2011).
[58] *CMI Hospital v. Depto. Salud,* 171 DPR 313, 321 (2007).
[59] *ALCO Corp. v. Mun. de Toa Alta,* supra, pág. 552.
[60] *Rodríguez Ramos et al. v. ELA et al.,* supra, págs. 456-457.

por la Regla 36.3 de Procedimiento Civil, *supra,* respecto a la moción de sentencia sumaria, así como su oposición. *Veamos.*

Luego de evaluar la *Moción Solicitando Que Se Dicte Sentencia Sumaria [..]* presentada por Solix, concluimos que esta cumplió con los requisitos de forma dispuestos por la Regla 36.3 de Procedimiento Civil, *supra.* En la referida solicitud, Solix enumeró treinta y seis (36) determinaciones de hechos relevantes sobre los que, a su juicio, no existía controversia. Como respaldo a tales hechos, anejó los documentos correspondientes e hizo referencia a cada uno de ellos de forma específica.

Por otra parte, luego de evaluar la *Contestación a [la] "Moción de Sentencia Sumaria"* presentada por el NET, concluimos que éstos no cumplieron a cabalidad con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra.* De un examen minucioso de su escrito en oposición se desprende que la parte apelada se limitó a exponer los hechos que a su entender no estaban en controversia y el derecho aplicable al caso. Ello sin negar, admitir o hacer referencia alguna a los párrafos enumerados por Solix en su solicitud. Sin embargo, a pesar de reconocer que, en su oposición, la parte apelada no acreditó la totalidad de las formalidades requeridas por la Regla 36, *supra,* somos de la opinión que ello no dispone sin más de la controversia ante nuestra consideración.

Siendo así, nos corresponde determinar si existen hechos en controversia que impidan la adjudicación sumaria del caso. Tras un examen detenido del expediente junto con la moción de sentencia sumaria y su oposición, así como de los documentos incluidos en estos, concluimos que no existen hechos materiales en controversia. Ante ello, coincidimos con las determinaciones de hechos acogidas por el foro primario y adoptamos dichas determinaciones de hechos. Por último, nos corresponde revisar *de novo* si el foro apelado aplicó el derecho correctamente.

Mediante el recurso de apelación de epígrafe, la parte apelante aduce que las circunstancias del caso ameritan que hagamos un balance entre dos intereses encontrados por parte del Estado y, consecuentemente, lo evaluemos como una excepción a la teoría de contratación gubernamental. Esta alega que los servicios se brindaron al amparo de un contrato en el cual se incluyó una cláusula que le obligaba a continuar administrando el fondo, si le era requerido por la JRT, hasta que se diera la transición a un nuevo contratista. Argumenta que, conforme a lo resuelto por el Tribunal Supremo de Puerto Rico en *Rosario Rodríguez v. Rosado Colomer*, 208 DPR 419 (2021), esta era una cláusula de *continuidad indefinida* —también conocida como cláusula de *holding over*— válida que tenía como propósito evitar la suspensión del servicio universal que recibían miles de personas de escasos recurso. *No le asiste la razón.*

De entrada, debemos puntualizar que la situación fáctica que tuvo ante su consideración nuestro más Alto Foro en *Rosario Rodríguez v. Rosado Colomer*, supra, es distinguible de la controversia ante nuestra consideración. Allí, en el contexto de una legislación que permitía aplicar cláusulas de *holding over* a funcionarios oficiales de la Comisión Estatal de Elecciones, el Tribunal Supremo de Puerto Rico expresó que estas constituían un mecanismo legislativo válido para evitar vacantes que pudieran entorpecer la continuación de la administración de dichos servicios públicos. En ese sentido, es de notar que, las interpretaciones allí contenidas se alejan de la presente causa de acción. La parte apelante pretende que pasemos por alto los requisitos de contratación gubernamental en virtud de una cláusula que, a su juicio, tuvo el propósito de evitar la interrupción de los servicios públicos. Sin embargo, como es bien sabido, las partes contratantes

pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público.[61]

En el caso, es un hecho incontrovertido que en el contrato otorgado entre las partes se dispuso que el mismo tendría vigencia desde el 23 de abril de 2007 hasta el 23 de abril de 2010. Además, las partes suscribieron una enmienda para extender el término del contrato por un año adicional pero, a partir del vencimiento de esta, acordaron continuar efectuando las obligaciones contractuales mes a mes, sin reducirlo a escrito conforme requiere la ley.

Siendo así, no podemos obviar que el requisito de un contrato escrito es indispensable para que este tenga efecto vinculante entre las partes.[62] En ese sentido, somos los tribunales los llamados a mirar con cautela las reclamaciones fundadas en acuerdos de contratos, en los cuales las autoridades ejecutantes no han dado cumplimiento a los mandatos de ley.[63] Ello pues solo mediante una evaluación rigurosa de los requisitos de contratación gubernamental, queda satisfecho el sentir legislativo y la conciencia judicial adjudicativa sobre desembolso de fondos públicos.[64]

La parte apelante sostiene también que resolver que procede la devolución del dinero significa colocar al contratista en la difícil posición de tener que escoger entre cumplir con una cláusula clara y arriesgarse a no cobrar por el servicio, o incumplir con las disposiciones de su contrato afectando al público que depende del servicio que este provee sin posibilidad de que la agencia pueda ofrecer el mismo. No nos convence su argumento. Nuestro más Alta Curia ha expresado que las partes privadas que se crucen de brazos y presten servicios sin exigir prueba fehaciente de que el gobierno

---

[61] 3 LPRA sec. 9753.
[62] *JAAP Corp. v. Depto. Estado et al.,* supra, pág. 741; *Colón Colón v. Mun. de Arecibo*, 170 DPR 718, 725-726 (2007).
[63] *Alco Corp. v. Mun. de Toa Alta*, supra, pág. 538.
[64] *Íd.*

cumplió con su deber, se arriesgan a asumir la responsabilidad por sus pérdidas.[65]

Por ende, tras un análisis detenido de los escritos presentados por las partes en el foro primario, así como de los anejos que los acompañan, en ausencia total de hechos materiales en controversia, y a tenor con el derecho aplicable, resultaba correcto, como cuestión de derecho, que el TPI dictara la *Sentencia* objeto de este recurso. Reiteramos que es norma firmemente establecida en nuestro ordenamiento jurídico que, para que un contrato entre una entidad gubernamental y una parte privada sea válido y vinculante, este debe reducirse a escrito, sin que exista cabida para excepción alguna. Las disposiciones legales dirigidas a proteger desembolsos públicos persiguen proteger el interés público y no a las partes contratantes.[66]

A la luz de lo anteriormente expuesto, concluimos que el TPI no cometió el error señalado por la parte apelante. Por consiguiente, procede que confirmemos la *Sentencia* apelada.

**IV.**

En virtud de lo anterior, se confirma la *Sentencia* apelada.

**Notifíquese.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[65] *Colón Colón v. Mun. de Arecibo*, supra, pág. 729, citando a *Lugo v. Municipio Guayama*, 163 DPR 208, 218 (2004).

[66] *Quest Diagnostics v. Mun. San Juan*, pág. 1002; *Fernández & Gutiérrez v. Mun. San Juan*, 147 DPR 824, 833 (1999); *Hatton v. Municipio de Ponce*, 134 DPR 1001, 1011 (1994).